# Toledo, St. Louis & Kansas City Railroad Company

## v.

## Izora Crittenden.

*Railroads — Negligence—Personal Injuries—Unnecessary Whistling and Letting off Steam—Frightening of Team—Evidence—Instructions.*

1.    Where a man and wife and team are at a railroad station, she in the vehicle, he out, both she and the team are in his care, and a want of ordinary care on his part, contributing to an injury suffered by the wife, would have the same legal effect as if it were her own, and bar a recovery, unless the injury was wilfully inflicted.

2.    Whether there was want of such care on the husband's part in a given case, is a question of fact for the jury.

3.    If it was a fact in a given case that the servants of a railroad company did " unnecessarily " blow the whistle or let off steam in close proximity to a team, it would not necessarily follow, as a matter of law, that it was wrongful negligence.

4.    An instruction invading the province of the jury should not be given.

[Opinion filed December 3, 1891.]

Appeal from the Circuit Court of Coles County; the Hon. J. F. Hughes, Judge, presiding.

Messrs. Wiley & Neal, for appellant.

In C., B. & Q. R. R. Co. v. Flint, 22 Ill. App. 502, Justice McAllister uses the following language: " We have examined the evidence in this case, and find that upon all the essentials of a recovery it was closely conflicting and left in such doubt that a verdict for the defendant would not have been subject to have been set aside as unsupported by the evidence. It is the well established rule of the Supreme Court in such a case, that unless each instruction to the jury given on behalf of the plaintiff, if the successful party, stated the law with accuracy, and was free from all error calculated to mislead the jury, the judgment must be reversed and the

cause sent back for a new trial." C. & A. R. R. Co. v. Murray, 62 Ill. 326; Volk v. Roche, 70 Ill. 297; T. W. & W. Ry. Co. v. Moore, 77 Ill. 217; Cushman v. Cogswell, 86 Ill. 62; T. W. & W. Ry. Co. v. Grable, 88 Ill. 441; Am. Ins. Co. v. Crawford, 89 Ill. 62; Wabash Ry. Co. v. Henks, 91 Ill. 475; Stratton v. Central City St. Ry. Co., 95 Ill. 25; Swan v. People, 98 Ill. 610; L. S. & M. S. Ry. Co. v. Elson, 15 Ill. App. 80.

The first instruction given for plaintiff was inaccurate, and calculated to mislead the jury. This instruction was as follows:

"1. The court instructs the jury that if you find from the evidence that the plaintiff was holding the team while the goods of her husband were being unloaded on the platform of the defendant for shipment, and if the jury further believe, from the evidence, that the defendant, by its employes, unnecessarily, either by whistling or escape of steam, in close proximity to the team, frightened the team and caused it to run off and injure the plaintiff, then she is entitled to recover."

This instruction takes the question of negligence entirely away from the jury, and plaintiff's right to recovery is based upon the finding the facts set forth in said instruction. Our Supreme Court has frequently decided the question of negligence is one of fact and not of law. G. W. R. R. Co. v. Haworth, 39 Ill. 353; C. & A. R. R. Co. v. Pennell, 94 Ill. 448; Penn. Co. v. Conlan, 101 Ill. 93; Penn. Co. v. Frana, 112 Ill. 398; Myers v. I. & St. L. R. R. Co., 113 Ill. 386; C. & E. I. R. R. Co. v. O'Connor, 119 Ill. 597; Chicago v. Morse, 33 Ill. App. 61.

Our Supreme Court has again and again announced the doctrine that " to maintain an action for negligence there must be fault on the part of defendant and no want of ordinary care on the part of the plaintiff." C., B. & Q. R. R. Co. v. Hazzard, 26 Ill. 373; C., B. & Q. R. R. Co. v. Dewey, 26 Ill. 255; C. & A. R. R. Co. v. Gretzner, 46 Ill. 76; C., B. & Q. R. R. Co. v. Damerell, 81 Ill. 450; C., B. & Q. R. R. Co. v. Johnson, 103 Ill. 512; C., B. & Q. R. R. Co. v. Warner, 123 Ill. 38; Willard v. Swansen, 126 Ill. 381.

This rule of law was recognized by the court below and announced in the instructions given for defendant. But defendant lost all benefit of such instructions by the court's announcing in the first instruction for plaintiff what facts would constitute ordinary care. And the effect of the instruction is " that if plaintiff was holding the team while goods were being unloaded " she was exercising ordinary care. This instruction takes away from the jury all consideration of the manner of holding the team. It fails to recognize that a team may be held negligently or carefully. It takes from the jury all consideration of the question whether or not the team was in such a place that it was negligence to remain on the wagon at all. All the surrounding facts and circumstances are taken from the consideration of the jury, and plaintiff's right to recover, so far as her own acts are concerned, is based upon the one fact that she was holding the team.

And with reference to the acts of the defendant, the whole question of negligence was taken from the jury, and they are instructed in substance that it was such negligence as entitled plaintiff to a verdict, if defendant's servants, unnecessarily, either by whistling or escape of steam in close proximity to the team, frightened said team.

They might have been in close proximity to the team and not have been able to see it; every unnecessary act is not negligence. We hardly see how one instruction could embody more errors. It is erroneous in usurping the province of the jury, and having erroneously usurped the province of the jury, it erroneously states what facts constitute negligence, and what constitute ordinary care.

There is no possible light in which this instruction can be viewed that it does not appear to be in direct conflict with repeated decisions of our Supreme Court.

Mr. A. C. Ficklin, for appellee.

A judgment will not always be reversed, although some instructions may be technically wrong, where justice has been done, and instructions were of such a character as not to mislead the jury. They should all be considered together. Hardy v. Keeler, 56 Ill. 152.

Appellant would be liable if its acts were wilfully and wantonly done. In this case the servants of appellant knew and saw where appellee was at time of letting steam escape and could have avoided consequences thereof if they had wished to do so. Permitting steam to escape or whistling unnecessarily within ten or twelve feet of a team, knowing it to be there, is such an act as will raise the presumption of an intention to injure. T. W. & W. R. R. Co. v. Harmon, 47 Ill. 298; C., B. & Q. R. R. Co. v. Johnson, 103 Ill. 520; Shearman and Redfield on Negligence, Sec. 65.

Verdict is in accordance with the evidence, instructions of appellant and appellee. The jury having first found the fact of whistling or escapement of steam unnecessarily at that point, could not help but further believe it was done wilfully and wantonly.

PLEASANTS, J.   In October, 1889, appellee was thrown from a wagon at Oakland, a small station on appellant's road in Coles County, and for the injury so received recovered judgment for $500, on the claim that the team was made to run away by negligence of appellant's servants on its locomotive in whistling and letting off of steam.

At this place the road runs northeast and southwest. The depot is on the north side, with a platform twelve to fifteen feet wide extending twenty-five feet west of it. There was a side track and Y on the south side.

The accident occurred a little after four o'clock in the afternoon. Appellee was in a wagon which had been driven by her husband, containing household goods for shipment to Charleston, and was backed up to the platform west of the depot to be unloaded. A west bound freight train had stopped east of the depot, to take on a car from the Y. The engine, having left it there, backed in by the side track on to the Y, pushed the car out onto the main track, and then by a running switch dropped it onto the train.

It was while the engine was making this drop that the team suddenly started to run. The car was taken something over a hundred feet west of the platform, to give it sufficient

momentum, and the engine on its return was going quite fast when it passed it. The claim is that when about or nearly abreast of the team a short, shrill whistle was given and steam let off, one or both of which caused it to run away.

The evidence on the part of the plaintiff, consisting of the testimony of herself, her husband, her brother, and an affidavit for continuance as to what another witness if present would testify to, is somewhat confused and conflicting as to where the engine was with reference to the team, when the whistle was blown and the steam let off; but there is some, clearly tending to show it was in front of the platform or depot. They differed in opinion also as to what frightened the horses. " The engine," and " the chugging " of the cars coming together, were separately and distinctly stated as the cause by some, though the whistle, and the letting off of steam, which only were alleged in the declaration—were also severally stated by others.

But the conductor, who had got off the train and was on the platform watching the operation of switching, the engineer, the fireman and the brakeman, swear positively that the whistle was not blown nor steam let off in the course of it; that there was no occasion for either, and that nothing was done that was not necessary, and all in the usual manner. Besides these, the roadmaster, the station agent and Mr. Ricketts, a resident of Charleston who was never in the employ of the company, say they did not hear any, and think they would have heard it if there had been any whistling or letting off of steam. The conductor, brakeman and Mr. Ricketts say that in reversing the engine to drop the car there was a sharp exhaust, which is an escape from the top of the stack, and that may have scared the team, but it was unavoidable in the work to be done.

Since it was for the jury to determine what was in fact done by the trainmen and whether it was negligent, we might not feel justified in interfering with their verdict, if these were the only questions involved and they had been properly instructed, though we might think it to be against the weight of the evidence.

It appears that the team in question did not belong to appellee's husband. He had driven it three or four times about the farm but never about the railroad. He knew there was switching being done, and must have known there would be "chugging," reversing and exhausting near the platform. When he had unloaded partly, the agent told him to come into the office to give his name and a list of the goods to be billed. He had left his wife alone in the wagon, and said he couldn't leave his team, but he did and went in. It was while he was so gone that the horses started. There was evidence tending to show that he left the lines wrapped around the seat, which was but a loose board, and that she did not attempt to take hold of them until the team started, when "she grabbed for them and got hold of one line," as her brother states it. Whether she had any experience as a driver, or judgment as to management of horses, was not shown; nor whether she was strong or weak, timid and nervous, or otherwise, except as indicated by her action on that occasion. She was apprehensive of danger from the situation and asked her brother, standing near and in charge of another team, to hold hers, but he said it wouldn't run. Her own account of her conduct is: "I had hold of the lines, and when they started to run I suppose I let go and commenced hallooing." Dr. Montgomery, who treated her for her injury, testified that she said her husband and brother were to blame; that they went off and left her alone, and that she told them not to go; that she so stated in substance, repeatedly.

Notwithstanding this evidence the court gave the following instruction: "If you believe from the evidence that the plaintiff was holding the team while the goods of her husband were being unloaded on the platform of the defendant for shipment, and if the jury further believe from the evidence that the defendant, by its employes, unnecessarily, either by whistling or escape of steam, in close proximity to the team, frightened the team and caused it to run off and injure the plaintiff, then she is entitled to recover."

Appellee and the team were in charge of her husband. Therefore as between herself and the railroad company, a

want of ordinary care on his part, contributing to the injury, would have the same legal effect as if it were her own, and bar a recovery, unless the injury were wilfully committed by the company. City of Rock Island v. Vanlandschoot, 78 Ill. 485. And whether there was such a want on his part was a question for the jury. Did he exercise ordinary care in leaving her alone in the wagon, as he did? Was she a fit person to hold the team, unhitched, under the circumstances? The evidence referred to fairly raised that question. But the court told the jury, as matter of law, that if she was " holding the team," it was enough on that point. Had she been a child of three years, the case might have differed in degree but would not in kind.

And again, from the fact, if it were a fact, that the employes of the defendant did " unnecessarily " blow the whistle or let off steam in close proximity to the team, it would not follow, necessarily, or as matter of law, that this was wrongful negligence.

Thus on both of these material questions of fact, whether there was ordinary care on the part of plaintiff, and negligence on that of defendant, the instruction invaded the province of the jury, and for that error the judgment will be reversed and the cause remanded.

*Reversed and remanded.*